UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ROBERT P. MEEGAN, JR., individually and as
President of the Buffalo Police Benevolent
Association, and the BUFFALO POLICE
BENEVOLENT ASSOCIATION,

            Plaintiffs,
  v.                                                                    **DECISION AND ORDER**
                                                                              11-CV-621S
BRYON W. BROWN, as Mayor of the City of
Buffalo, CITY OF BUFFALO, BUFFALO FISCAL
STABILITY AUTHORITY, NILS OLSEN, as
Chairman of the Buffalo Fiscal Stability Authority,
ANDREW M. CUOMO, as Governor of the State of
New York, STATE OF NEW YORK,

            Defendants.
───────────────────────────────

      1.      This action once again concerns the much-litigated Wage Freeze Resolution ("Wage Freeze" or "Freeze") enacted by the Buffalo Fiscal Stability Authority ("BFSA"). The background of the Freeze has been well-documented by this Court, the Second Circuit, and the courts of New York State. To summarize, on July 3, 2003, the New York State Legislature, through the Buffalo Fiscal Stability Authority Act ("Act"), created the Control Board to stabilize and improve the City of Buffalo's failing financial health. One of the powers the legislature vested in the Control Board was the discretion to freeze wages. On April 21, 2004, the Control Board exercised that discretion and enacted the Wage Freeze, which, for purposes of this case, had the effect of eliminating contractual salary increases that Plaintiffs had negotiated with the City of Buffalo.

      On July 1, 2007, the BFSA lifted the Wage Freeze and took the position that the Act should be read to mean that affected employees' wages or salaries would not include increases that would have accrued during the Wage Freeze period. This was apparently contrary to the parties' working understanding while the Freeze was in effect.

2. It is this post-repeal interpretation of the Act that Plaintiffs, Robert Meegan and the Buffalo Police Benevolent Association, argue violates the Contract and Takings Clauses of the United States Constitution.[1] See U.S. Const. art. I, § 10, cl. 1; U.S. Const. amend. V. Defendants, the City of Buffalo and the BFSA, have each filed motions to dismiss. For the following reasons, those motions are granted.

3. Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

4. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129

---

[1] The Act itself, as opposed to the post-repeal interpretation of the Act, has also been challenged in this Court as a violation of these clauses. The Act was upheld. Buffalo Teachers Fed'n v. Tobe, 446 F. Supp. 2d 134 (W.D.N.Y. 2005) aff'd Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362 (2d Cir. 2006) cert. denied, 550 U.S. 918, 127 S. Ct. 2133, 167 L. Ed. 2d 864 (2007).

S. Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950. Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

  5. Both Defendants seek dismissal of Plaintiffs' claims on res judicata grounds. Dismissal on this ground, if warranted, is permissible on a Rule 12(b)(6) motion. See Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992). In adjudicating such a motion, this Court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and rev'd in part on other grounds sub nom.*, Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935, 126 S. Ct. 421, 163 L. Ed. 2d 321 (2005). Significantly, in consideration of the fifth element, this Court can take judicial notice of state-court judgments. See, e.g., Scherer v. Equitable Life Assurance Soc'y, 347 F.3d 394, 402 (2d Cir. 2003) (taking judicial notice of state-court records);

Washington v. U.S. Tennis Ass'n, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) (courts are "permitted to take judicial notice of court documents from previous actions").

6. "Under the doctrine of res judicata, or claim preclusion, 'a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quoting Rivet v. Regions Bank of La., 522 U.S. 470, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998)).

7. Specifically, looking to New York law as this Court must, see Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984), four requirements must be met: (1) a previous action involving the same plaintiffs or those in privity with them (2) was resolved on the merits (3) by a court of competent jurisdiction, and, most importantly, (4) the subsequent action involves claims that were, or could have been, raised in the previous action. See EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007); Monahan v. N.Y.C. Dep't of Corrs., 214 F.3d 275, 285 (2d Cir. 2000). As alluded to above, this Court must give New York state court decisions the same preclusive effect that a New York state court would. Migra, 465 U.S. at 81; O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009).

8. Here, Defendants seek dismissal of this action based on New York proceedings Meegan v. Masiello, 21 A.D.3d 1266, 802 N.Y.S.2d 576 (4th Dep't 2005) (Meegan I) and Meegan v. Brown, 16 N.Y.3d 395, 948 N.E.2d 425, 924 N.Y.S.2d 1 (2011) (Meegan II), both of which were (1) brought by the same plaintiffs, (2) resolved on the merits (3) by a court of competent jurisdiction and (4) involved claims raised in this action that were, or could have been, raised in those actions.

9. In <u>Meegan I</u>, the Police Benevolence Association ("PBA") commenced proceedings in state court on May 27, 2004 against the BFSA challenging the Wage Freeze as, *inter alia*, unconstitutional. (Pl.'s Pet. ¶ 60-67, attached as "Ex. B" to Buzzard Decl.; Docket No. 17-3.) After receiving a favorable outcome in the trial court, the Appellate Division, 4th Department, reversed and dismissed the PBA's petition on the merits. Motions for leave to appeal were denied.

10. In <u>Meegan II</u>, after the BFSA lifted the Wage Freeze in July 2007 and determined that affected employees' wages or salaries would not include increases that would have accrued during the Wage Freeze period, the PBA commenced an article 78 proceeding challenging this interpretation of the Act. The PBA received favorable outcomes at the trial court and intermediate appellate court, but the Court of Appeals reversed the Fourth Department and held that the Act "plainly permits the BFSA to suspend all salary and wage increases, including any 'step up' and 'increments'." <u>Meegan II</u>, 16 N.Y.3d at 402.

11. It is equally plain that Meegan and the PBA seek relief from the "same transaction or series of transactions" as in their state-court proceedings. In each proceeding, here and in the state courts, the PBA's complaint arises out of the same set of facts (the BFSA adopting a Wage Freeze, subsequently repealing it, and interpreting it to mean that affected employees could not recover lost step-increases) and they concern causes of action (constitutional violations) that could have been, and were, raised in either proceeding. See <u>Schulz v. Williams</u>, 44 F.3d 48, 54 (2d Cir. 1994) (constitutional claims can be adjudicated in the courts of New York). Such a situation presents a textbook example for the application of res judicata. See <u>Ferris v. Cuevas</u>, 118 F.3d 122, 126 (2d.

Cir. 1997) ("Once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy") (internal citations, quotation marks and modifications omitted).

12.     Indeed, the PBA offers scant, if any, response to this argument – neither the phrase "res judicata" nor its equivalent even appears in their responding affidavit. Although there are very limited exceptions to this doctrine, Plaintiffs do not argue that those exceptions should apply here. Nor do they argue that they were prevented from raising these issues in the state court proceedings, likely because, in fact, they did. In its brief submitted to the Court of Appeals, the PBA asserted that the BFSA's interpretation of the Act was a violation of the Contracts Clause. (PBA's Ct. of App. Br. at 33-35, attached as "Ex. H" to Buzzard Decl.; Docket No. 17-5.) Further, Plaintiffs' claim here would be barred even if they did not raise this point in their Court of Appeals brief because the focus is on the "transactions or series of transactions" at issue, not the remedy or theories of liability. See Ferris, 118 F.3d at 126.

13.     The Plaintiffs appear to suggest that res judicata is inapplicable because the injury from which they now seek relief arose as a direct result of the New York Court of Appeals' decision. Plaintiffs state in their affidavit, "[T]he constitutionality of the [Act] did not come into issue, as to the lifting of the wage freeze, until the New York State Court of Appeals interpreted the statute contrary to the lower courts[] . . . ." (Schwan Aff., ¶ 36; Docket No. 20.) This Court also notes that the Court of Appeals did not specifically address any constitutional issues.

Although Plaintiffs only hint that they take umbrage with this aspect of the decision,

to the extent that they seek to argue that their injury was caused by the state court or their constitutional rights were not given due consideration, this Court lacks jurisdiction to hear such a claim and Plaintiffs must appeal to the United States Supreme Court. See Howlett v. Rose, 496 U.S. 356, 366 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990); Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L. Ed. 97 (1816); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) (Rooker-Feldman doctrine bars all federal courts, except the Supreme Court, from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). Further, any suggestion that the Court of Appeals' interpretation of the Act rendered it unconstitutional misunderstands basic premises of law dating to Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803). When a court rules that a statute is unconstitutional, the court's ruling does not render it so, but simply recognizes that the statute was unconstitutional when it was adopted by the legislative and executive branches. These suggestions, therefore, do not save Plaintiffs' claims.

14.   What is more, Plaintiffs' claims fail for at least two additional reasons. First, they are time-barred. A 42 U.S.C. § 1983 action accrues when the plaintiff knew or had reason to know of the injury that forms the basis of his action. See Patterson v. City of Oneida, 375 F.3d 206, 225 (2004). Assuming, without deciding, that this action should be constrained by § 1983's three-year statute of limitations (and not a four-month limitation period as would be applicable to a New York State Article 78 proceeding), Plaintiffs claims fall outside this window. See Romer v. Leary, 425 F.2d 186, 188, (2d Cir. 1970); see also Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) ("The applicable statute of

limitations for a § 1983 action arising in New York State is three years."). The Act was initially adopted in 2003 and the Wage Freeze was implemented in 2004. Thus, if the limitations period were to run from either of those dates, Plaintiffs' action would surely be time-barred. But, even assuming a later start date, Plaintiffs' claims would still fail. Plaintiffs must have known about the BFSA's unfavorable interpretation of the Act – the interpretation about which they know complain – at the latest, on October 31, 2007 because they raised this concern in oral argument with Justice Michalek of the New York State Supreme Court. (See Oral Arg. Tr., 8:5-21, attached to Van Vessum Aff. as "Ex. D"; Docket No. 13-2.) Having filed their claim in July of 2011, their action would be time-barred even if the clock began to tick on October 31, 2007.[2]

15.     Second, this Court has already determined that the BFSA's interpretation of the Act did not violate the Contracts Clause as applied to the Buffalo Teachers Federation. See Buffalo Teachers Fed'n v. Tobe, --- F. Supp. 2d ----, No. 04–CV–457S, 2012 WL 444043, at *6-*7 (W.D.N.Y. Feb. 10, 2012) (Tobe III); see also Buffalo Teachers Fed'n v. Tobe, 446 F. Supp. 2d 134 (W.D.N.Y. 2005) (Tobe I) aff'd Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362 (2d Cir. 2006) *(*Tobe II*)* cert. denied, 550 U.S. 918,127 S. Ct. 2133, 167 L. Ed. 2d 864 (2007). Although the Buffalo Teachers Federation, the Plaintiffs in Tobe III, were operating under the strict Fed. R. Civ. P. 60(b) standard, the reasoning employed in that case, which concerned nearly the same set of circumstances and allegations, applies equally here. In short, this Court found, *inter alia*, that all the facts on which this Court and the Second Circuit initially relied in deciding Tobe I and Tobe II remained unchanged by

---

[2]Plaintiffs offer no response to this argument in their opposing affidavits.

the BFSA's post-repeal interpretation of the Act, and, "consequently, . . . this Court's ultimate conclusion" also remained unchanged: the Act did not violate the Contracts Clause. See Tobe III at *6.

16. A Takings Clause violation was not before this Court in Tobe III. But the Second Circuit upheld the Act as non-violative of the Takings Clause in Tobe II and this Court finds that discussion, like the Contracts Clause analysis, equally applicable here. See 464 F.3d at 375-76.

17. For the foregoing reasons, Defendants' motions are granted.

18. Finally, because Plaintiffs' claims are barred, this Court will, *sua sponte*, dismiss them as against the non-moving defendants. See, e.g., Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (per curiam) (*sua sponte* dismissal not only appropriate on res judicata grounds, but "virtually mandatory").

* * *

IT HEREBY IS ORDERED, that Bryon Brown and the City of Buffalo's Motion to Dismiss (Docket No. 13) is GRANTED.

FURTHER, that Nils Olsen and the Buffalo Fiscal Stability Authority's Motion to Dismiss (Docket No. 17) is GRANTED.

FURTHER, that claims against Andrew Cuomo and New York State are DISMISSED, *sua sponte*.

FURTHER, the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:  May 20, 2012
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court